Good morning, Your Honors. May it please the Court, and in an effort not to be redundant with respect to the argument. Same issue. I'll go right to Exergen. I think Exergen really solves the issue that I heard earlier in the early argument about what you do in a comprising claim, simply says when you have a comprising claim, you look to the disclosure to see what's disclosed, and you can ignore certain elements, not deconstruct it like Tudyk, but you can ignore those elements and look for to see whether that reference discloses the prior art. And in Exergen, I think Exergen is nearly, I think it's pretty close to being dead on point here. You had, in Exergen, you had a thermometer that the claimed thermometer had detecting peak radiation across multiple areas, and the piece of prior art had detecting radiation over certain areas, and it had an additional detection system that combined with the earlier radiation, and that's how that one operated. And this Court said that you can ignore the second heat radiation sensing element because what you find disclosed is the claimed invention, and that's exactly what we have here. We have two heat sinks disclosed in Chao, one of which covers all of the elements of the claim, and that anticipates the 9-6-8 patent. We're not deconstructing here in Chao, and I think it's probably important to maybe, if you would look at page four of the reply brief, you can see that in Chao, you have page four shows figure 2B of the Chao reference, and it shows figure 30 of the 9-6-8 patent. And they're essentially, in the claimed elements, they're identical. They have, Chao has the heat spreader. It's integrally connected to the heat sink. It meets the requirements of the height to diameter limitation, and it's essentially identical to what's shown in figure 30. So we're not deconstructing anything. That shows the exact claimed features of the 9-6-8 patent. And I think Your Honor asked earlier that the claims that are issued in this appeal are claims 1, 2, and 6. I think it's 1, 3, and 6. 1, 2, and 6. Thank you. I thought it was only 2 and 6. I'm wrong about that? I believe claim 1 is still in this case. Thank you. Anything more? I guess I would add, I'm trying not to be redundant, Your Honor, but I would say that when you look at the claim here, and I know that Judge Chen was talking about the claim earlier, it's a comprising claim. It has a heat spreader and a heat sink thermally coupled to the heat spreader. The heat sink being substantially ring-shaped and being disposed around and coupled to an outer periphery of the heat spreader. That's the claim. There is no multitude of heat sinks. There is no arrangement of heat sinks in the claim. There's not every heat sink in the claim. There is no reference to any efficiency. There is no reference to any specific amount of energy that must be dissipated. The claim is merely, you have to find a heat sink. And that heat sink has to be substantially ring-shaped, and it has to be disposed around the heat spreader. And essentially, the patent owner agrees. All those elements are there. That Trim 12 meets all those elements. So unless you have further questions on this, I think I will stop. OK. Mr. Missouri? Your Honors, I'm thankful for my additional time. I know the questions that you've raised. Is it right that 1, 2, and 6 are involved in this case? I believe it's only 2 and 6, Your Honor. 1 has already been invalidated, and we have not challenged that. Your Honors, let me just make sure that it's clear that this reference, 2, was extensively considered during examination and was, in fact, amended around. And one of the key aspects that the patentee added to the claims to make sure that it distinguished itself from the prior art are the height and depth limitations that we've talked about this morning. And so Chu has this heat sink 14. And I'm referring to page 4 of the reply brief. Chu has this heat sink 14 we see in the image from figure 2B of Chu. And conveniently, the appellant, Satco, tries to sort of show visually that that's just like figure 30 of the 968 patent. Well, it's not. The difference is that the 968 patent doesn't have a great big protruding heat sink, and it brings down the dimensions. And that's why the dimensional limitations are not met when you consider Chu's heat sink 14 as part of the overall heat sink. Now, again, that's technical innovation. And to say, well, we can get there by simply ignoring heat sink 14 in Chu and assuming that Chu was always designed like the invention of the patent begs the question, well, then what is it that the patentee achieved or invented or claimed, especially when they amended around this reference? And the answer is, we can't do that in the context of Chu as a matter of fact finding, as the board found, because then we would be looking at only part of the overall heat sink structure of Chu. No, it does not have to be the case that everything that dissipates heat has to be considered as a heat sink. I absolutely agree with that. What it does need to be is that adequate heat sinking to enable the reference has to be considered as part of the heat sink. And what that is, whether it's only the outer flange 22 or the outer flange 22 plus the heat sink 14, is a fact question that the board thoroughly considered and decided. This was the central issue before the board. Now, if your honors finds that the basis for the board's decision is not adequately clear somehow from the decision, that it doesn't perhaps make sense to your honors why the board decided that both of those structures together have to be considered as the heat sink rather than only one of them, then that, at best, is a basis for a remand to ask the board to further explain its reasoning, not an outright reversal on a core question of factor honors. During the prosecution, when you amended the claim to overcome the Cho reference, and there was a lot of discussion about heat sink element 14 in Cho, and why now the claim clearly gets around that element, to what extent was the examiner and the applicant talking about outer flange 22 of Cho and wrestling with the question of, well, is that a heat sink? Or should we be considering that as a separate heat sink? Or maybe we should not be considering that as a separate heat sink. I think, your honor, so the short answer is it was not expressly and thoroughly discussed in that manner. And I think the reason was that nobody, either from the examiner's side or the patentee's side, ever contemplated that you can look at Cho's system, which clearly, I believe, as the board has found, has this combination heat sink of 14 with the rest of the structure of outer flange 22. Right, but the dialogue was just about looking solely at heat sink element 14. There wasn't any discussion about, well, there's an overall integrated heat sink system in Cho that comprises element 14 and this outer flange 22. There was no discussion like that. It was solely surgically directed at just element 14 in a singular way, right? Your honor, it's correct that the focus of the discussion was on heat sink 14. The way that I understand that as I look at that history and I think about the landscape here is that the focus was on 14 because 14 has always been the problem with Cho, meaning that 22 on its own, if it could be considered the heat sink, would not be an issue. That's why it's such a central debate. What it does seem to suggest is that the patent applicant treated claim element 14 in Cho to be a separate element. So I understand why you're saying that, your honor. That's not the way that I interpret the history. The way I interpret the history is that what is certain is that you have to consider heat sink 14 as part of Cho's heat sink, whatever it is. And once you do, you have a problem because you can't meet these limitations. Whether that means that heat sink 14 is the only heat sink or a part of a heat sink system is not the thing that is expressly being addressed by those prosecution history comments. And nothing about those comments is inconsistent with the fact that the overall heat sink of Cho is 14 and 22 together. It's just that 14 is the problem for purposes of meeting the limitation. The fact that both of them are separately enumerated, to me and apparently to the board, doesn't end the inquiry of what is the heat sink. If each of the radial fins were separately enumerated, we wouldn't say that, right? At the end of the day, the question is, what does the adequate heat sinking to enable this reference to be a heat sink? If there were a fully redundant heat sink and Cho said, I've got 22, that does everything I need, but sometimes 22 can get damaged or fail or get rusted and I need to have a backup and that's what 14 is, then we would not be having this discussion. And the way I can assure you of that is that in the companion IPR, the 844 patent IPR, the board said that Cho's outer flange 22 alone can be enough for purposes of obviousness. And the reason it said that is because there was a theory of a modification to Cho, wherein the petitioner Satco said, let's take out some of the LEDs in Cho and let's reduce the operating temperature down. And let's also modify the outer flange 22 so that it's robust enough to do adequate heat sinking. And the board said, OK, well, if you're going to do obviousness, then I can credit you that outer flange 22 would be an adequate heat sink. But when you come to me with an anticipation argument, both in this IPR and in the one that we just argued a moment ago, for anticipation purposes, that's not enough. And so the board has a clear and reconcilable and consistently applied viewpoint on what is an adequate heat sink or not for purposes of the prior art and these claims. And it does depend on this issue of enablement and 102 versus 103. And I think, again, if this court feels that there is a lack of clarity in that regard, then at best, that factual determination should be handed back to the board to further explain its reasoning. I certainly don't think that there is a basis for any outright reversal. OK. Anything more? I'd like to address any questions that I can. I understand Your Honor's reluctance to see the board's reasoning here. I fully appreciate it. I do think it makes sense. And I'd like to address any questions I can, if you have any. OK. Thank you, Your Honors. Mr. Rigg, anything more? Very briefly, Your Honor. Counsel continues to argue about 14 and 12, but never addresses exergent and how exergent actually applies to this case. The other point is that I don't think there is a basis for a remand. I think the claims are unpatentable and should be found so by this court. OK. Thank you. Thank both counsel. The case is submitted.